**UNITED STATES of America,**

v.

**Ronald WALLACE, Defendant.**

**No. 98 CR 681(JBW).**

United States District Court, E.D. New York.

March 15, 1999.

Zachary W. Carter, United States Attorney, Brooklyn, NY by Kelly Curie, Assistant United States Attorney, Chris Gunther, Assistant United States Attorney, for the United States.

Susan Gail Kellman, New York City, for Ronald Wallace.

## MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

This criminal case charging false statements to the Internal Revenue Service on applications for tax refunds raises two jury charging issues. One, involving the question of when knowledge of the law must be proven as an element of the offense—the classic issue of applicability of the assumption that everyone is expected to act as if he or she knew what the law is—requires a ruling favoring the defense. The other, posing the problem of the substitute for knowledge in defendant's deliberately closing his eyes to what he would otherwise have known—the ostrich claim—must be decided for the government.

## I. FACTS

Over the years defendant, a corrections officer employed by the City of New York, had prospective federal income taxes deducted from his weekly pay check. He would regularly apply to the Internal Revenue Service for a refund based on the W–

2 form provided by his employer showing the amount withheld for the prior year. In 1993, a professional tax preparer filled out his request for a refund for the tax year 1992; the government promptly paid the refund requested. In 1994 and 1995 the defendant himself filed requests for refunds for the 1993 and 1994 tax years respectively; the refunds were paid within a few weeks.

In 1996, shortly before defendant planned to file his request for a refund on his 1995 income tax, a fellow employee revealed at a casual meeting that there was no need to pay any federal income taxes. He provided defendant with printed literature suggesting that no individual in New York—or in any other state—needed to pay federal income taxes on their wages because, for federal tax regulations purposes, they were not "citizens of the United States" and their wages were not "income."

For four hundred dollars defendant's coworker agreed to fill out the 1995 tax year return requesting a refund for *all* of the taxes withheld in that year, and amended returns for the 1992, 1993 and 1994 tax years requesting a refund on *all* of the taxes paid in those years. The returns were signed by defendant and filed with the IRS. Attached to them was some of the literature supplied by the coworker. Defendant claimed on the tax forms that he had no income for the years 1992, 1993, 1994 and 1995.

Testifying on his own behalf, defendant admitted that he was a citizen of the United States and received weekly wages, but he insisted that he had been persuaded, by the literature and advice that he received, to believe that IRS regulations treated his wages as non-income for federal tax purposes.

Defendant never checked to determine whether the advice and literature he received construing federal tax laws was accurate. He sought no advice or information from his employer, any tax adviser

other than his coworker (a person without any apparent special competence in the tax laws), the IRS, or any other person. Nor did he disclose to any relative or friend the good news that he, and they, were freed from federal income taxes.

The government made no refund. It repeatedly requested a tax return for the 1995 tax year. Moreover, defendant also received notice from New York State that it had rejected similar claims defendant made against the state for refunds. Yet, he continued to insist that his idiosyncratic view of federal tax laws was unshaken.

Finally, in 1998, defendant was indicted for a violation of section 287 of title 18 in four counts—one for each relevant tax year—in that the defendant "falsely stated" on tax returns that his taxable income during the years 1992 through 1995 was zero and that the defendant used these false statements to calculate false claims for refunds.

Section 287 of title 18 provides that:

Whoever makes or presents to any person or officer in the ... service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

## II. LAW

### A. Knowledge of the Law

The general rule is that we all are assumed to know the law. If, therefore, a person knowingly and willfully does an act that turns out to be a violation of a law, that person is traditionally treated as if he knowingly violated that law. Obviously, this assumption creates problems, particularly when the law is complex and esoteric, since a person acting on the assumption that he is lawfully fulfilling all his legal obligations may be ensnared into acting contrary to a law of which he was unaware.

The harshness of the Anglo–American doctrine permitting conviction of a defendant of a crime when he thinks his act was lawful, and he therefore has no moral culpability, has long troubled commentators. In 1962 the American Law Institute took a major step towards eradicating this theoretical lapse with the adoption of the Model Penal Code (Herbert Wechsler, Chief Reporter). The ALI approved a comprehensive and complex provision providing, with extensive limitations, that "ignorance or mistake as to a matter of fact or law" could be a valid defense to a criminal prosecution. *See* Model Penal Code § 2.04 (1962).

Among criticisms of the Model Code provision is that it is not sufficiently inclusive and that it places the burden of showing lack of knowledge of the law on the defendant. *See, e.g.,* George P. Fletcher, *Dogmas of the Model Penal Code*, 2 Buffalo Crim.L.Rev. 3, 21–23 (1998). *But see,* Paul H. Robinson, *In Defense of the Model Penal Code*, 2 Buffalo Crim.L.Rev. 25, 37 (1998) (burden of proof should be on defendant).

The Supreme Court addressed the problem of ignorance of the law directly, but within the limits of the United States Tax Code, in *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). There the defendant, an airline pilot, claimed he was exempt from federal taxes and sought—as did defendant in the instant case—a complete refund of withheld taxes. He was charged with violating two sections of the code that used the phrase "willfully" in a way that implicated the ignorance of the law problem. As the Court put it:

Title 26, § 7201 of the United States Code provides that any person "who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof" shall be guilty of a felony. Under 26 U.S.C. § 7203, "[a]ny person required under this title ... or by regulations made under authority thereof to make a re-

turn ... who willfully fails to ... make such return" shall be guilty of a misdemeanor. This case turns on the meaning of the word "willfully" as used in §§ 7201 and 7203.

*Id.* at 193–194, 111 S.Ct. 604.

There was strong evidence that the defendant-pilot knew his claim was invalid as a matter of law. Since he had been aware of the statutes and caselaw as well as the strong disagreement of his attorney, he probably would not have been justified in relying on an ignorance of the law defense under the Model Penal Code. *See* Model Penal Code § 2.04(3) (1962). The Court acknowledged:

> The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.

*Cheek*, 498 U.S. at 199, 111 S.Ct. 604.

Nevertheless, the Court refused to apply the traditional mistake of law doctrine to cases involving tax violations. It went on to recognize the severe problems faced by the layperson in construing tax laws:

> The proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws.

*Id.* at 199–200, 111 S.Ct. 604.

The Court defined willfulness by putting the burden of negating knowledge of the law on the United States:

> Willfulness ... requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty.... But carrying this burden requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws. This is so because one cannot be aware that the law imposes a duty upon him and yet be ignorant of it,

misunderstand the law, or believe that the duty does not exist. In the end, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief ... whether or not the claimed belief or misunderstanding is objectively reasonable.

*Id.* at 201–202, 111 S.Ct. 604.

The Court, as reflected in the above quotation, repeatedly referred to defendant's "good-faith." It is not clear what "good-faith" means in this context. Since the question is whether in fact the defendant believed or did not believe in his version of the law, a good-faith test appears to add nothing to the issue for the jury. It seems to reflect a vague warning to courts and juries to be somewhat skeptical about evidence of defendant's lack of knowledge of the law—at least in the rudimentary area of taxes on wages. Moreover, a requirement of "good-faith" seems contrary to the Court's placing the burden of disproving belief squarely on the government. The Court explicitly rejected the view of the Court of Appeals that defendant's belief or lack of belief must be "objectively reasonable," stating:

> We thus disagree with the Court of Appeals' requirement that a claimed good-faith belief must be objectively reasonable if it is to be considered as possibly negating the Government's evidence purporting to show a defendant's awareness of the legal duty at issue. Knowledge and belief are characteristically questions for the factfinder, in this case the jury. Characterizing a particular belief as not objectively reasonable transforms the inquiry into a legal one and would prevent the jury from considering it. It would of course be proper to exclude evidence having no relevance or probative value with respect to willfulness; but it is not contrary to common sense, let alone impossible, for a defendant to be ignorant of his duty based on

an irrational belief that he has no duty, and forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision. *Id.* at 203, 111 S.Ct. 604.

Since the parties agreed that "good-faith" belonged in the charge, it was included as a word that did neither much harm nor good in assisting the jury. It should be omitted from future charges.

Arguably, *Cheek* could be restricted to tax code violations. *See, e.g.,* 1 Leonard B. Sand et al., Modern Federal Jury Instructions ¶ 8.01, at 8–7, and cases cited at fn. 26 (1998). The government could argue that an individual making a claim upon the government has an affirmative duty to determine whether or not he is entitled under the law to that claim. Under this reading, a party would be held responsible for a negligent or mistaken belief.

Such a pro-government approach should be rejected for two reasons. First, the requirement of "knowledge" contained in the statute, § 287 of title 18, is sufficiently analogous to the "willful" standard at issue in *Cheek* to make that case applicable here. Second, the government should not be able to avoid criminal procedural protections for taxpayers simply by charging a crime under title 18 rather than under title 26.

■ The gravamen of the charge in the instant case is one of tax law violations. The falsehoods charged depend upon an understanding of legal definitions of such terms as "income" and "citizenship" under the tax code and regulations. If defendant believed in the definition of these and other terms suggested by his coworker, he would not be lying when he claimed entitlement to full refunds. It makes no difference in this case whether defendant's claimed ignorance is characterized as one of fact or law or whether it was made in good faith. This is one example of a case where the traditional law-fact distinction is not helpful. The government must prove beyond a reasonable doubt that defendant knew his view of his responsibilities under the tax law was wrong.

Defendant is entitled to the same protections he would have received under *Cheek* had he been charged with a violation of sections 7201 and 7203 of title 26 rather than of section 287 of title 18. Rejected must be the government's contention that it need not prove defendant falsified his beliefs about the income tax law definitions and his responsibilities under that law. Defendant's request for an appropriate instruction that embodies the conclusions of *Cheek* on mistake of law must be granted.

### B. *Deliberately avoiding the facts about the law*

■ The government argues that the jury could find that defendant, if he did not "know" his statements on his tax returns were false, closed his eyes to what should have been clear—their falsity. According to the government, the jury could find that the defendant was aware of a high probability that the claim was false. Defendant's claimed beliefs about his tax obligations were counter-intuitive. They conflicted with his own tax-paying practices, they were based upon advice at a chance meeting with a fellow employee who had no apparent qualifications in tax law, they were unchecked through readily available advisory sources, and they were not shared with others whom defendant would be expected to want to benefit.

This is a nearly perfect example of a case where a jury could find defendant refused to believe what he had every reason to know—that he was filing false claims and that his reliance on his version of definitions in the tax law was unfounded. Accordingly, the government's request for an appropriate charge cannot be denied.

### III. JURY CHARGE

■ The following are the operative portions of the charge, drafted after a

charging conference and embodying the conclusions in Part II:

The documents attached to the tax returns contain certain references to laws and court cases, but the statements of law, insofar as they deal with the issues in this case, are not to be relied upon. The law you will apply in this case is the law that I am about to instruct you on.

The term "wages" means all remuneration or payment for services performed by an employee for his or her employer. 26 U.S.C. § 3401.

The term "gross income" means all income from whatever source derived, including interest, dividends and compensation for services, whether in the form of wages from employment or from money earned from self-employment. 26 U.S.C. § 61(a).

A person is permitted to subtract from his or her gross income certain expenses. The amount remaining after these items are deducted from gross income is termed "adjusted gross income." 26 U.S.C. § 62.

A person is then permitted to deduct from adjusted gross income certain other permissible deductions and exemptions. The amount remaining after these deductions is termed "taxable income." Taxable income is the amount upon which a person's tax liability is calculated. 26 U.S.C. § 63.

A person is entitled to a tax refund if the amount of tax that has already been collected from the person during the tax year exceeds the actual amount of taxes owed, given the person's taxable income. Any overpayment in taxes is the refund to which the taxpayer is entitled. 26 U.S.C. §§ 6401–6402.

One way in which taxes are collected during the tax year is through the withholding of taxes from a person's wages. Every employer is required to deduct and withhold taxes from wages in accordance with tables or computational procedures prescribed by the Internal Revenue Service. 26 U.S.C. § 3402.

. . .

In order to sustain its burden of proof for the crime of knowingly submitting a false, fictitious, or fraudulent claim to the United States as charged in counts one through four of the indictment, the government must prove the following three essential elements beyond a reasonable doubt:

1) that the Defendant knowingly made or presented to the Internal Revenue Service a claim against the United States;

2) that, at the time this claim was presented, the Internal Revenue Service was a department or agency of the United States;

3) that the defendant presented this claim knowing that it was false or fictitious as to a material fact.

A "claim," as that word is used in these instructions, is a demand for money, property, credit, or reimbursement.

The term "agency," as used in these instructions, includes the Internal Revenue Service; it is an agency of the United States.

A "false" or "fictitious" claim is a claim which is untrue when made or when used and which is known by the person making it or using it to be untrue.

A claim is "material," as that word is used in these instructions, if it has a natural tendency to influence or was capable of influencing the decision of the decision making body to which the claim was made.

An act is done knowingly if it is done voluntarily and purposefully, and not done by mistake, carelessness or other innocent reason.

The government does not have to prove that the defendant knew of the relevant criminal provision governing his conduct [18 U.S.C. § 287], as long as it

 

proves that the defendant knew that the claim was false or fictitious.

The government does not need to prove that the government relied on the false claim. The government does not need to prove that it made any payments on the false claim.

In determining whether the defendant acted knowingly, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him. If you find beyond a reasonable doubt that the defendant acted with a conscious purpose to avoid learning the truth, then this element may be satisfied. However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish or mistaken.

If you find that the defendant was aware of a high probability that the claim was false and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly. However, if you find that the defendant actually believed that the statement was true, he must be acquitted. The government has the burden of proving beyond a reasonable doubt that the defendant did not believe the statement to be true.

A statement made with a good faith belief in its accuracy does not amount to a false statement and is not a crime. This is so even if the statement is, in fact, erroneous. The defendant would be not guilty if, for example, the defendant believed his assertion that he had no "wages," no "gross income," no "adjusted gross income," no "taxable income," no "citizenship" in the United States under the Internal Revenue Code, or if he believed he was entitled to a proper refund in the amount he requested under the Internal Revenue Code and regulations.

The burden of establishing lack of good faith and criminal intent rests upon the prosecution. A defendant is under no burden to prove his good faith; rather, the prosecution must prove knowledge of falsity, beyond a reasonable doubt.

SO ORDERED.